FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★ OCT 29 2014 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
JOSHUA BRINN,

                  Plaintiff,

-against-

SYOSSET PUBLIC LIBRARY, MORRIS
DUFFY ALONSO & FALEY, UTICA
NATIONAL INSURANCE COMPANY,
JUDITH LOCKMAN, Director of the
Syosset Public Library, in her
individual and professional capacity,
ROBERT GLICK, Trustee of the Syosset
Public Library, in his individual and
professional capacity,

                  Defendants.
----------------------------------------------------X

**OPINION AND ORDER**
**09-CV-1151 (SJF)**

FEUERSTEIN, District Judge:

Defendants Syosset Public Library, Judith Lockman and Robert Glick ("Library defendants") and defendant law firm Morris Duffy Alonso & Faley ("Morris Duffy") have filed motions for summary judgment pursuant to Federal Rule of Civil Procedure ("FRCP") 56. For the following reasons, both defendants' motions are **GRANTED** and plaintiff's complaint is dismissed.

**I.    Background**

**A.    Facts**

Plaintiff *pro se* Joshua Brinn ("plaintiff") was employed as an attorney by defendant law firm Morris Duffy from March 2006 until April 16, 2008. Law Firm 56.1(a) Stmt. ¶¶ 1, 2. Andrea Alonso ("Alonso") is Morris Duffy's managing partner. *Id.* at ¶ 8. Kevin Faley ("Faley") is a partner at Morris Duffy with management duties. *Id.* at ¶ 9. Kevin Mahon

("Mahon") is a partner at Morris Duffy. *Id.* at ¶ 10.

Defendant Judith Lockman ("Lockman") is Director of the Syosset Public Library (Library"). Lib. 56.1(a) Stmt. ¶ 4. Defendant Robert Glick ("Glick") is a Library Trustee. Law Firm 56.1(a) Stmt. ¶ 5. Utica National Insurance Company ("Utica") was the Library's insurer during the relevant time period and was also one of Morris Duffy's clients.[1] *Id.* at ¶¶ 4, 6. Betty Winkler ("Winkler") was a casualty claims specialist for Utica. *Id.* at ¶ 7.

Plaintiff has patronized Syosset Public Library ("Library") approximately once or twice a week since childhood. Lib. Def. 56.1(a) Stmt. ¶ 2. On September 29, 2007, an incident occurred at the library involving plaintiff and a library employee. *Id.* at ¶ 3. By letter dated October 15, 2007, the library's attorney, William Cullen, advised plaintiff that Director Lockman had suspended his library privileges for one (1) year based upon four (4) instances of inappropriate behavior. Dec. Catalano, Exh. F. The letter advised plaintiff that he had a right to protest the suspension to the Library's Board of Trustees ("Board") and included a copy of the Library's Policy of Maintenance of Public Order at Library Premises. *Id.* On November 16, 2007 and by letter addressed to the Board's president Lorraine Trachtman, plaintiff objected to the suspension and asked the Board to reverse its decision. *Id.* at Exh. G. By letter dated December 14, 2007, plaintiff again wrote to Ms. Trachtman and requested a formal hearing to appeal the one (1) year suspension. *Id.* at Exh. H. By letter dated December 21, 2007, Cullen wrote to plaintiff and advised that the request was denied because: (1) it was untimely; and (2) plaintiff did not reside in the Syosset Central School District. *Id.* at Exh. I. By letter dated January 5, 2008, plaintiff

---

[1] Utica National Insurance Company was dismissed from this case by Order dated September 23, 2010. DE 41.

argued that his time to appeal should be extended because the Library had been closed for renovations. *Id.* at Exh. J.

At a Board meeting held on January 8, 2008, it was determined that plaintiff should be heard on the suspension and Glick was authorized to contact plaintiff. Lib. Def. 56.1(a) Stmt. ¶¶ 6, 7. After the meeting and while plaintiff was on Library grounds despite the suspension, Glick introduced himself and advised plaintiff that he was an attorney at which time plaintiff told Glick he was an attorney with Morris Duffy. Dec. Glick ¶¶ 12-14.[2] Glick mentioned that he knew managing partner Alonso through local professional organizations. *Id.* at ¶ 15. Glick advised plaintiff that the Board would promptly respond to his January 5, 2008 letter. *Id.* at ¶ 16.

Following that meeting, Glick discovered that plaintiff had filed a notice of claim against the library and called plaintiff at work to remind him of their conversation and to invite plaintiff to a Board meeting if plaintiff agreed to withdraw the notice of claim. *Id.* at ¶ 18. According to Glick, plaintiff stated he would consider the offer. *Id.* at ¶ 19. Plaintiff denies that Glick invited him to a board meeting, but concedes that Glick wanted the notice of claim withdrawn. Plt. 56.1(b) Stmt. ¶ 11. Not having heard from plaintiff, Glick called Alonso, advised her of the situation and requested that she ask plaintiff to return his call. Dec. Glick ¶ 21. Glick also spoke

---

[2] Plaintiff argues that the declarations submitted by Robert Glick, Andrea Alonso and Benjamin Truncale are inadmissible as they are neither notarized nor made pursuant to 28 U.S.C. § 1746. Mem. in Opp. Lib. Def. p. 15. "Section 1746 allows a court to consider as evidence an unsworn declaration if it "is subscribed by [the declarant], as true under penalty of perjury, and dated, in substantially the following form: 'I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.' " *Dubreus v. North Shore University Hosp.*, No. 12 Civ. 940, 2012 WL 5879110, at *3 (E.D.N.Y. Nov. 20, 2012) (quoting 28 U.S.C. § 1746). Each declaration is so subscribed and dated.

with Morris Duffy partner Kevin Mahon who also agreed to speak to plaintiff about returning Glick's calls. Law Firm 56.1(a) Stmt. ¶ 12; Dec. Contini, Exh. D (Glick Deposition) p. 68. Alonso advised plaintiff that he could not continue to work for Morris Duffy and sue the Library because Utica, a major client of Morris Duffy, insured the Library. Lib. Def. 56.1(a) Stmt. ¶ 13; Dec. Contini, Exh. F (Alonso Deposition) pp.18, 20-21. On January 14, 2008, Mahon advised plaintiff that someone from the library wanted to discuss the suspension. Lib. 56.1(a) Stmt. ¶¶ 14, 15. According to plaintiff, Mahon was evasive when asked to identify the person. Plt. 56.1(b) Stmt. ¶ 15.

By letter dated January 24, 2008, Board president Trachtman invited plaintiff to meet with the Board on February 12, 2008. Dec. Catalano, Exh. L. By letter dated February 10, 2008, plaintiff responded that the Board's letter was vague and he would not attend without clear notice of the meeting's purpose. Dec. Brinn, Exh. V. On February 26 and March 4, 2008, the Library's newly retained general counsel, Benjamin Truncale, wrote to plaintiff to ask him to attend the March 11, 2008 Board meeting "to discuss the possible reinstatement of your Library privileges and a resolution of the pending notice of claim." Dec. Catalano, Exhs. M and N. On March 7, 2008, plaintiff again responded that counsel's letter was vague because it failed to state whether the meeting constituted a hearing or if the Library intended to offer a settlement. *Id.* at Exh. O.

On March 19, 2008, Betty Winkler ("Winkler"), claims examiner for Utica, testified that in the course of her duties, she called Alonso to verify plaintiff's employment because he had filed a claim for damages against the Library. Lib. 56.1(a) Stmt. ¶ 19; Dec. Catalano, Exh. AA (Winkler Deposition) p. 19. Winkler testified that Alonso informed her that a Library trustee had contacted Alonso regarding the claim and, thereafter, several people at Morris Duffy had advised

-4-

plaintiff not to pursue it. Lib. 56.1(a) Stmt. ¶ 21; Dec. Catalano, Exh. AA p. 20. Later that day, plaintiff was summoned to Alonso's office and advised that the firm required him to discontinue his claim because: (1) the Library was insured by Utica; (2) Utica was a client of Morris Duffy; and (3) and employees could not sue the firm's clients. Lib. 56.1(a) Stmt. at ¶ 22. Plaintiff claims Alonso never advised him of the policy. Plt. Lib. 56.1(b) Stmt. ¶ 22.

By letter dated March 28, 2008, plaintiff advised Utica that the notice was withdrawn. Lib. 56.1(a) Stmt. ¶ 23. On April 7, 2008, Truncale sent a general release to Winkler and requested that she send it to plaintiff for his signature. *Id.* at ¶ 25. Winkler sent the release to Morris Duffy and on April 16, 2008, Alonso asked plaintiff to sign the document. *Id.* at ¶¶ 26, 27. Plaintiff emailed Alonso later that day to advise her that he would not sign the general release or allow Utica or the Library to force him to do so. *Id.* at ¶ 28. Plaintiff testified that Alonso immediately terminated his employment; Alonso claims plaintiff resigned voluntarily. *Id.* at ¶ 29. Plaintiff filed a second notice of claim against the Library in July 2008. Dec. Brinn, Exh. K ¶ 8; Compl. ¶ 35.

## B.     Procedural History

Plaintiff filed this action on March 19, 2009 against the Library defendants, Morris Duffy and Utica National Insurance Company alleging, pursuant to 42 U.S.C. § 1983, violations of the First and Fourteenth Amendments and the Due Process Clause. The complaint also alleged various state law claims, including interference with a business opportunity; intentional infliction of emotional distress; breach of the covenants of good faith and fair dealing; and free speech violations under New York's constitution. Defendants filed motions to dismiss and plaintiff, who was then represented by counsel, withdrew his due process and breach of good faith and fair

dealing claims. The Court dismissed plaintiff's intentional infliction of emotional distress claim and dismissed the complaint as to defendant Utica based upon 42 U.S.C. § 1983's state action requirement. Plaintiff's remaining claims allege free speech retaliation under the federal and New York constitutions against both defendants and, as to the Library, tortious interference with contractual relations.

## II. Discussion

### A. Legal Standard for Summary Judgment

A motion for summary judgment shall not be granted unless a court determines that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting FRCP 56(a)). Thus, where the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact, the moving party is entitled to judgment. *Williams v. R.H. Donnelly Corp.*, 368 F.3d 123, 126 (2d Cir. 2004). The court must resolve all ambiguities and draw all inferences in favor of the non-moving party. *Id.*; *Castle Rock Entm't, Inc. v. Carol Publ'g Grp.*, 150 F.3d 132, 137 (2d Cir. 1998). "A party opposing a properly brought motion for summary judgment bears the burden of going beyond the [specific] pleadings, and 'designating specific facts showing that there is a genuine issue for trial.' " *Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). If there is any evidence in the record from which a reasonable inference may be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper. *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).

There is a "genuine" issue of fact only if the "evidence [presented] is such that a reasonable jury could return a verdict for the nonmoving party." *Giodano v. City of New York*, 274 F.3d 740, 746-47 (2d Cir. 2001). "[A]ttempts to twist the record do not create a genuine issue of material fact for a jury." *Kim v. Son*, No. 05 Civ. 1262, 2007 WL 1989473, at *6 (E.D.N.Y. July 9, 2007). Therefore, "where the cited materials do not support the factual assertions in the Statements, the Court is free to disregard the assertion." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001). In addition, "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996). Finally, Federal Rule of Civil Procedure 56(c) mandates that all facts under consideration in a motion for summary judgment be directly supported by proof in admissible form.

## B.  Plaintiff's Claims

### 1.  Free Speech Retaliation

#### a.  State Action Requirement as to Morris Duffy

As an initial matter, Morris Duffy argues that plaintiff has not established that it acted under color of state law and it is therefore entitled to judgment on plaintiff's retaliation claims.

Title 42 U.S.C. § 1983 provides, in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." Accordingly, "[b]y the plain terms of § 1983,

two-and only two-allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (citing *Monroe v. Pape*, 365 U.S. 167, 171 (1961)).

Under the joint action test, however, private activity may amount to state action "when the state provides 'significant encouragement' to the entity" and the entity is a "willful participant in joint activity with the [s]tate." *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 258 (2d Cir. 2008) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 296 (2001)). " 'To establish joint action, a plaintiff must show that the private citizen and the state official shared a common unlawful goal; the true state actor and the jointly acting private party must agree to deprive the plaintiff of rights guaranteed by federal law.' " *Wong v. Yoo*, 649 F. Supp. 2d 34, 55-56 (E.D.N.Y. 2009) (quoting *Bang v. Utopia Restaurant*, 923 F. Supp. 46, 49 (S.D.N.Y. 1996)). Thus, a plaintiff must establish: "(1) an agreement between two or more state actors or a state actor and a private entity (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal, and causing some harm." *Peres v. Oceanside Union Free School District*, 426 F. Supp. 2d 15, 24 (E.D.N.Y. 2006) (citing *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002)).

### b. Analysis

On January 8, 2008 and during an executive meeting, the Board authorized defendant Glick to contact plaintiff to arrange a hearing regarding the suspension. Dec. Glick ¶ 11. After Glick did not hear from plaintiff, he called Morris Duffy managing partner Alonso. *Id.* at ¶ 21.

According to Alonso, Glick advised her that the Library was insured by Utica National and that Utica knew "that [plaintiff] is an attorney who works in your office" and "they are not happy about this." Dec. Contini, Exh. F p.16. Alonso responded that she was unaware that plaintiff had filed a notice of claim with the Library or that the Library was Utica's client, but advised Glick that Utica was one of Morris Duffy's major clients. *Id.* Glick asked Alonso to have plaintiff return his call whereupon Alonso stated, "let me see what I can do." Dec. Glick ¶ 21; Dec. Contini, Exh. F p. 17. Alonso and Glick did not discuss plaintiff again. Dec. Contini, Exh. F pp. 33-34; Dec. Glick ¶ 24.

That afternoon, Alonso called plaintiff into her office and advised him that she had received a telephone call from an attorney with the Library who stated that plaintiff had filed either a notice of claim or a lawsuit; Alonso could not recall which term she used. Dec. Contini, Exh. F pp. 19-20. Plaintiff stated that the situation was personal and he had a constitutional right to sue, at which time Alonso informed him that Utica was Morris Duffy's client and although he had the right to sue, he could not do so while employed by the firm. *Id.* at pp. 20-21.

Kevin Mahon testified that based upon his cordial relationship with plaintiff, Alonso and Kevin Faley approached him to discuss the situation *Id.* at Exh. E (Mahon Deposition) p. 8. The attorneys advised Mahon that plaintiff was having some issues with the Library and requested he telephone Glick to see if plaintiff's library privileges could be reinstated. *Id.* at pp. 9-10. Mahon contacted Glick, who stated that plaintiff could return to the Library if he discontinued the behavior which led to the suspension. *Id.* at p.13. There was no discussion between Glick and Mahon regarding the notice of claim or any type of lawsuit against the Library. *Id.* at 13; Dec. Glick ¶ 23.

-9-

Based upon the foregoing, there is no evidence that the Library and Morris Duffy had an implicit or express agreement to act in concert to inflict an unconstitutional injury upon plaintiff and, therefore, plaintiff cannot establish state action as to the law firm. Accordingly, Morris Duffy's motion for judgment on plaintiff's free speech claims is granted and the claims are dismissed as to this defendant.

### c. Legal Standard for Free Speech Retaliation Claims

The First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. New York's Constitution provides, in pertinent part: "Every citizen may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press."[3] N.Y. Const. art. 1, § 8.

First Amendment retaliation claims "asserted outside of the prison context are generally divided into two distinct categories: (1) claims made by public employees who claim that they were retaliated against for speaking out on matters of public concern; and (2) claims made by private citizens asserting that the government took retaliatory action against them based upon their exercise of their First Amendment rights." *Wolff v. Town of Mount Pleasant*, No. 06 Civ. 3864, 2009 WL 1468691, at *5 (S.D.N.Y. April 27, 2009) (citing *Williams v. Town of*

---

[3] Free speech claims under the First Amendment and the New York State Constitution are subject to the same standards and the Court's analysis applies to both of plaintiff's free speech claims. *See Housing Works, Inc. v. Turner*, 179 F. Supp. 2d 177, 199 n.25 (S.D.N.Y. 2001).

*Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008) (holding that the elements of a First Amendment retaliation claim differ depending on the factual context). To prevail on a First Amendment retaliation claim, a private citizen must demonstrate: "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).

### d. Analysis

As to the first element, the filing of a notice of claim is a well-established form of protected activity under the First Amendment. *Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 431 n.32 (S.D.N.Y. 2013) (citing *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 91 (2d Cir. 2002)).

As to the second element, both a "private citizen plaintiff and a public employee plaintiff must allege that a defendant acted in response to his or her exercise of protected First Amendment activity in order to maintain his or her claim for relief." *Wolff*, 2009 WL 1468691, at *6. In response to plaintiff's filing of the notice of claim, the Board instructed Glick to communicate with plaintiff about withdrawing the claim and, thereafter, Glick contacted plaintiff and offered him a hearing if he would withdraw the notice of claim after meeting with the Board. Thus, the Library acted in response to plaintiff's protected activity.

As to the third element, "[i]n the First Amendment context, allegations of a "subjective chill" of free speech rights will not suffice to satisfy the injury-in-fact requirement." *Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.*, 462 F.3d 219, 226 (2d Cir. 2006) (citing *Laird v.*

*Tatum*, 408 U.S. 1, 13-14 (1972)). "Rather, a plaintiff must demonstrate some specific present or future objective harm that the challenged . . . [conduct] has inflicted by deterring him from engaging in protected activity." *Id.* (citing *Latino Officers Ass'n v. Safir*, 170 F.3d 167, 170 (2d Cir. 1999)). Where, however, a plaintiff cannot establish that his first amendment rights were actually chilled, "various forms of concrete harm have been substituted for the "actual chilling" requirement." *Garafalo v. City of Saratoga Springs*, No. 11 Civ. 0087, 2013 WL 1180835, at *5 (N.D.N.Y. Mar. 20, 2013) (citing *Zherka v. Amicone*, 634 F.3d 642, 643 (2d Cir. 2011)).

Plaintiff has not demonstrated that the Library defendants actually chilled his speech or that they are responsible for the termination of his employment with Morris Duffy. The uncontroverted evidence shows that despite Glick's conversations with plaintiff on behalf of the Library, plaintiff did not withdraw his notice of claim. Rather, on or about March 28, 2008, plaintiff advised Utica that he withdrew the notice and he subsequently testified that it was withdrawn based upon Alonso's and Faley's threats to fire him. Dec. Catalano, Exh. R; Dec. Contini, Exh. I (Brinn Deposition) p. 118; Compl. ¶ 31. Furthermore, plaintiff filed a second notice of claim against the Library. Compl. ¶ 35. Accordingly, plaintiff has not established, with respect to the Library, a causal relationship between the filing of the notice of claim and the termination of his employment. *See Mangano v. Cambariere*, No. 04 Civ. 4980, 2007 WL 2846418, at *2 (S.D.N.Y. Sept. 27, 2007) (granting summary judgment on plaintiff's first amendment retaliation claim where there was no evidence that plaintiff was deterred from engaging in free speech or seeking judicial redress). The Library defendants' motion for summary judgment on plaintiff's free speech retaliation claims is, therefore, granted and the

claims are dismissed.

### e. Individual Capacity Claims

Plaintiff's complaint also alleges free speech violations against Library Director Judith Lockman and defendant Glick in their individual capacities under § 1983. In order to establish individual liability where "the alleged violation is based on a "chill" of one's First Amendment rights, a plaintiff must prove that she was "actually chilled" in the exercise of her rights." *Mazza v. Hendrick Hudson Cent. School Dist.*, 942 F. Supp. 187, 192 (S.D.N.Y. 1996) (citing *Davis v. Village Park II Realty*, 578 F.2d 461, 464 (2d Cir.1978)). In addition, "personal involvement by the particular defendants" is a prerequisite to liability for claims brought under § 1983. *Gallagher v. Town of Fairfield*, No. 10 Civ. 1270, 2011 WL 3563160, at *6 (D. Conn. Aug. 15, 2011).

As to Lockman, there is no evidence that she was personally involved in the alleged retaliation in response to plaintiff's filing of the notice of claim. Additionally, Lockman was the Library's employee with no apparent authority over the Board or its trustees. With respect to Glick and as discussed above, plaintiff has not established chilling of any exercise of rights or any harm based upon the Library's conduct in response to plaintiff's notice of claim. For these reasons, defendants' motion for summary judgment on plaintiff's individual capacity claims against Lockman and Glick is granted.

### 2. Tortious Interference with Business Relations Claim

To state a claim for tortious interference with business relations, plaintiff must establish: "(a) that a valid contract exists; (b) that a "third party" had knowledge of the contract; (c) that the

third party intentionally and improperly procured the breach of the contract; and (d) that the breach resulted in damage to the plaintiff." *Finley v. Giacobbe*, 79 F.3d 1285, 1294 (2d Cir. 1996) (citing *Israel v. Wood Dolson Co.*, 134 N.E.2d 97, 99-100 (N.Y. 1956); *Kaminski v. United Parcel Service*, 501 N.Y.S.2d 871, 873 (N.Y. App. Div. 1986)). The New York Court of Appeals has held that New York does not recognize a cause of action in tort for abusive or wrongful discharge of an at-will employee. *Murphy v. Amer. Home Prod. Corp.*, 448 N.E.2d 86, 89 (N.Y. 1983). "[W]here an employment is for an indefinite term it is presumed to be a hiring at will which may be freely terminated by either party at any time for any reason or even for no reason." *Id.* (citing *Martin v. New York Life Ins. Co.*, 42 N.E. 416, 417 (N.Y. 1895). However, "an at-will employee may maintain a tortious interference claim in 'certain limited situations,' but 'she must establish that a third party used wrongful means to effect the termination such as fraud, misrepresentation, or threats.'" *Okoi v. El Al Israel Airlines*, No. 09 Civ. 0977, 2010 WL 1980263, at *1 (2d Cir. May 19, 2010) (quoting *Albert v. Loksen*, 239 F.3d 256, 274 (2d Cir. 2001)).

As defined under New York law, plaintiff is an at-will employee. Assuming, *arguendo*, that plaintiff falls within New York's limited exception for at-will employees based upon the Library's alleged conduct, his claim fails because the record does not demonstrate that the Library intentionally and improperly procured his termination from Morris Duffy. Rather, the evidence establishes that Glick told Alonso that plaintiff had filed a notice of claim against the Library and that the library's insurer was displeased. The record further demonstrates that once Glick advised Alonso that Utica was the insurer, Morris Duffy's concern over plaintiff's notice of claim arose from its independent relationship with Utica as one of the firm's major clients.

Accordingly, the Library defendants' motion for judgment on this claim must be granted because plaintiff cannot establish that the Library's actions were the cause of his termination by Morris Duffy.

### III. Conclusion

Based upon all of the foregoing, the Library's and Morris Duffy's motions for summary judgment are **GRANTED** and plaintiff's complaint is dismissed with prejudice. The Clerk of the Court shall close this case.

**SO ORDERED.**

Dated: October 29, 2014
      Central Islip, New York

                                            s/ Sandra J. Feuerstein
                                            Sandra J. Feuerstein, U.S.D.J.